UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

00-02523

------------------------------------------x

JANE DOE,

             Plaintiff,

    -against-

CELEBRITY CRUISES, ZENITH SHIPPING
CORPORATION, APOLLO SHIP CHANDLERS,
and BARIS AYDIN, in personam, and
M/V ZENITH, her engines, boilers,
tackle, etc., in rem,

             Defendants.

CIV -     00 Civ.

MAGISTRATE JUDGE
    SIMONTON

------------------------------------------x

## COMPLAINT

     COMES NOW, plaintiff, JANE DOE, by and through her

counsel, Skoufalos, Llorca & Ziccardi, LLP and Schreiber

Rodon-Alvarez, P.A., as and for her Complaint against

defendants, CELEBRITY CRUISES, ZENITH SHIPPING CORPORATION,

APOLLO SHIP CHANDLERS and BARIS AYDIN, in personam,

and M/V ZENITH, her engines, boilers, tackle, etc., in rem,

and alleges upon information and belief as follows:


     1.   This is an action for breach of contract,

negligence and torts under both Florida law and general

maritime law.

     2.   This Court has subject matter jurisdiction pursuant

to 28 U.S.C. §1332 insofar as there is diversity of



citizenship between the plaintiff and defendants and the amount in controversy exceeds $75,000.00 excluding interest. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1333 insofar as this matter involves one or more claims which are maritime in nature and come under this Court's admiralty jurisdiction.

3.    Venue is proper under 28 U.S.C. §1391 insofar as two of the defendants reside or may be found within this District, and insofar as certain parties to this action have agreed to the venue of this action.

4.    At all relevant times, plaintiff, Jane Doe, is and was a resident of the State of Connecticut.

5.    At all relevant times, defendant, Celebrity Cruises ("Celebrity"), was and is, a foreign corporation which maintains its headquarters or place of business at 1050 Caribbean Way, Miami, Florida 33132, and which engages in the business of managing, operating, owning and/or chartering passenger vessels including, but not limited to the M/V ZENITH, and which arranges for the hiring, employment, training and/or manning of crew members for vessels owned managed, operated and/or chartered by Celebrity, including the crew of the M/V ZENITH.

6.    At all relevant times, defendant, Zenith Shipping Corporation ("ZSC"), is a foreign corporation organized and

2

existing under the laws of Liberia, and was and is the owner, manager, operator and/or charterer of the passenger vessel, M/V ZENITH.

7.   At all relevant times, defendant, Apollo Ship Chandlers ("Apollo"), was and is a domestic corporation with its primary place of business at 1775 N.W. 70th Avenue, Miami, Florida 33126.  Apollo engages in the business of providing crewing, manning, and/or other services, including but not limited to the hiring, retention or employment of certain crew members for vessels owned, managed, operated and/or chartered by Celebrity, including particularly the ZENITH.

8.   At all relevant times, defendant, Baris Aydin ("Aydin"), was and is a resident and national of the Republic of Turkey with a residential address at Istasyon Caddesi S. Yocel Ap. Kat: 6, No: 17A blok, Denizli, Turkey and, in July of 1999, was a crewmember of the M/V ZENITH, and as such, Aydin was an employee, servant and/or agent of ZSC, Celebrity and/or Apollo.

9.   Celebrity and/or ZSC, either independently or through Apollo Ship Chandlers, hired, retained and/or employed Aydin as a member of the crew of the M/V ZENITH.

10.  At all relevant times, the M/V ZENITH was and is a passenger vessel which is owned, managed and/or operated by

Celebrity and/or ZSC, and is presently within this District or is expected to be within this District in the near future.

11.   In 1999, plaintiff purchased a passenger ticket for passage on the M/V ZENITH for a seven-day cruise from New York, New York to Bermuda and back to New York, New York.

12.   Plaintiff paid $1,200.00 for this cruise package. A copy of the terms and conditions of the subject passenger ticket are attached hereto as Exhibit A.

13.   On July 17, 1999, plaintiff boarded the M/V ZENITH in New York City and the vessel departed for Bermuda.

14.   On July 19, 1999, the ZENITH arrived at Bermuda and dropped anchor in the port of Hamilton, Bermuda.

15.   Soon thereafter, plaintiff with friends went ashore to Hamilton, Bermuda.  Hamilton was one of the scheduled ports of call for the M/V ZENITH for this seven-day cruise.

16.   In the early morning hours of July 20, 1999, while in Hamilton with friends, plaintiff was feeling ill and accepted the assistance of crewmember Aydin.  Plaintiff and/or her friends had recognized defendant, Aydin, as a crewmember of the ZENITH.

17.   Instead of assisting plaintiff to the vessel -- which was docked in the local harbor located across the street -- Aydin led plaintiff away from her friends, away

4

from the local harbor and the vessel, and led plaintiff to a public restroom outside a nearby park in Hamilton.

18.   Thereafter, Aydin began to make sexual advances towards plaintiff and plaintiff rejected all such advances. Plaintiff again requested to be taken back to the vessel.

19.   Then, Aydin forcibly grabbed plaintiff and pinned her to the ground.  Plaintiff resisted but was unable to escape from Aydin.

20.   Plaintiff repeatedly pleaded with Aydin to stop his attack, but Aydin refused.  Aydin then sexually assaulted, raped and/or battered plaintiff in Hamilton, Bermuda.

21.   Plaintiff, bruised, injured and distraught after the attack by Aydin, returned to the vessel and reported the incident to the vessel's security department, as well as the local law enforcement authorities.

22.   Plaintiff saw the vessel's physician for treatment of her injuries and trauma.  However, the vessel's physician failed to properly treat plaintiff.  Rather, the physician acted in manner that sought to protect the legal interests of one or more of the defendants, and shield them from liability, rather than administering the appropriate medical and psychological treatment to the patient.  The physician failed to properly examine the plaintiff and failed to properly preserve evidence of the sexual assault or to

protect plaintiff from a sexually transmitted disease or pregnancy.

23.   Furthermore, Celebrity, ZSC, the vessel's officers and/or other crewmembers failed to investigate the incident and failed to properly collect or preserve evidence of the sexual assault and/or rape of the plaintiff, and/or otherwise obstructed the investigation of the incident.

24.   Celebrity, ZSC and/or the ZENITH's officers failed to discipline defendant, Aydin.   Even after plaintiff reported the incident to the vessel's security department and the local law enforcement authorities, Aydin remained on duty and continued to be employed as a crewmember of the ZENITH until local law enforcement personnel took him into custody and removed him from the vessel.

25.   Defendants, ZSC, Celebrity and/or Apollo, are responsible for and/or are strictly and vicariously liable for the acts of their respective employees, servants and/or agents, including, but not limited to, defendant, Aydin.

26.   As a direct result of defendants' aforementioned conduct, plaintiff has suffered physical pain and suffering, mental anguish, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment. Plaintiff has also incurred medical expenses for the care and

treatment of her injuries, many of which injuries are permanent or continuing in nature.

27.   Wherefore plaintiff demands judgment against the defendants for compensatory damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, CELEBRITY, ZSC AND M/V ZENITH (BREACH OF CONTRACT OF CARRIAGE)

28.   Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

29.   The contract of common carriage entered into between plaintiff and defendants, Celebrity, ZSC and/or M/V ZENITH (hereinafter referred to as "the passenger contract") is a valid and binding contract.

30.   The passenger contract has certain implied duties of care owed by the carrier to the passenger including but not limited to the obligation of the carrier to transport the passenger to and from the cruise destination with the highest degree of care and vigilance for the passenger's safety.

31.   Defendant Aydin committed wrongful acts of sexual assault, battery, negligent infliction of emotional distress

and intentional infliction of emotional distress against plaintiff.

32.   Previous instances of similar conduct by other employees of Celebrity, ZSC and/or M/V ZENITH should have put these defendants on notice of the measures needed to be taken to provide its passengers with a safe voyage and vessel, as well as the care necessary in choosing, training, supervising and/or employing crewmembers for their passenger vessels.

33.   As a result of Aydin's actions, Celebrity, ZSC and/or M/V ZENITH breached their contractual obligations under the passenger agreement and are, therefore, liable to plaintiff for the wrongful acts of their respective employees occurring throughout the entire contractual period, i.e. the seven-day cruise from New York to Bermuda and back to New York.

34.   As a direct result of this breach of contract by defendants, Celebrity, ZSC and/or M/V ZENITH, plaintiff has suffered compensatory damages in an amount of $2,500,000.00 plus interest, as best as can be determined at this time.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS, CELEBRITY, ZSC, M/V ZENITH AND APOLLO (NEGLIGENCE)**

8

35.  Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 34 above as if fully set forth herein.

36.  Defendants, Celebrity, ZSC, M/V ZENITH and/or Apollo owed duties of care to plaintiff as a passenger of the M/V ZENITH.

37.  Defendants, Celebrity, ZSC, M/V ZENITH and/or Apollo breached such duties and were negligent in the following particulars:

a.  In failing to properly control, supervise restrict and/or direct its employees, servants and/or agents, including, but not limited to, defendant, Aydin;

b.  In failing to provide proper security measures and/or personnel for the protection of its passengers, including the plaintiff;

c.  In failing to warn the female passengers of the potential dangers to them in being aboard its ship or on shore with members of the vessel's crew;

d.  In failing to properly screen, train and/or monitor its crew and personnel on a regular basis, including, but not limited to, defendant, Aydin;

e.  In negligently hiring its crew members, including, but not limited to, defendant, Aydin;

9

f.    In failing to take reasonable precautions and safety measures for the safety of its passengers;

g.    In failing to exercise the necessary and reasonable care owed to its passengers for the sexual assaults, rapes and/or batteries, especially considering the fact that previous instances of similar conduct by other employees of Celebrity, ZSC and/or M/V ZENITH should have put these defendants on notice of the measures needed to be taken to provide its passengers with a safe voyage and vessel, as well as the care necessary in choosing, training and/or employing crewmembers for their passenger vessels;

h.    In failing to enforce their respective internal policies and/or guidelines regarding the non-fraternization of vessel crewmembers with its passengers;

i.    In failing to treat plaintiff properly after she was sexually assaulted, battered and/or raped by defendant, Aydin;

j.    In failing to investigate the incident properly and/or preserve evidence relating to the incident;

       k.    In failing to discipline defendant, Aydin, after his sexual assault, battery and/or rape of the plaintiff;

       l.    In other acts of negligence presently unknown.

    38.  As a direct and proximate result of the negligence of defendants, Celebrity, ZSC, M/V ZENITH and/or Apollo, plaintiff has suffered compensatory damages in an amount of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST CELEBRITY, ZSC, M/V ZENITH, APOLLO AND AYDIN
### (SEXUAL ASSAULT)

    39.  Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 38 above as if fully set forth herein.

    40.  On or about July 20, 1999, plaintiff was assaulted, raped and/or battered by defendant, Aydin, a crewmember of the M/V ZENITH.

    41.  Plaintiff never consented to being sexually assaulted or otherwise injured by defendant, Aydin.

    42.  Defendants, Celebrity, ZSC, M/V ZENITH and/or Apollo are responsible for and/or are strictly or vicariously liable for the acts of its employees, servants and/or agents, including defendant, Aydin.

43.   As a direct and proximate result of the acts of defendants, their respective employee(s), agent(s) and/or servant(s), and of defendants' respective negligence, the plaintiff sustained personal and psychological injuries to her mind and body, many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature.  Plaintiff has suffered compensatory damages of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST CELEBRITY, ZSC, M/V ZENITH, APOLLO AND AYDIN (BATTERY)

44.   Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 43 above as if fully set forth herein.

45.   On or about July 20, 1999, defendant, Aydin, sexually assaulted, raped and/or battered the plaintiff.

46.   Plaintiff never consented to being sexually assaulted, battered or otherwise injured by defendant, Aydin.

47.   Defendants, Celebrity, ZSC, M/V ZENITH and/or Apollo are responsible for and/or are strictly or vicariously liable for the acts of its employees, servants and/or agents, including defendant, Aydin.

48.   As a direct and proximate result of the acts of defendants, their respective employee(s), agent(s) and/or servant(s), and of its negligence, the plaintiff sustained personal and psychological injuries to her mind and body, many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature.

49.   Plaintiff has suffered compensatory damages of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST CELEBRITY, ZSC, M/V ZENITH, APOLLO AND AYDIN (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

50.   Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 49 above as if fully set forth herein.

13

51.  On or about July 20, 1999, defendant, Aydin, sexually assaulted, raped and/or battered the plaintiff.

52.  In doing so, Aydin engaged in intentional or reckless behavior which was extreme, shocking and outrageous.

53.  Aydin knew that there was a non-fraternization policy in effect for the crewmembers of the M/V ZENITH. Aydin also knew that plaintiff had relied on the fact that, he was a crewmember, when she requested his assistance to help her get back to the vessel on July 20, 1999.

54.  As a crewmember of the M/V ZENITH, Aydin owed a duty to protect and care for the plaintiff.  He, instead, deliberately, knowingly and intentionally breached this duty by sexually assaulting, raping and/or battering the plaintiff.

55.  Defendants, Celebrity, ZSC, M/V ZENITH and/or Apollo are responsible for and/or are strictly or vicariously liable for the acts of its employees, servants and/or agents, including defendant, Aydin.

56.  As a direct and proximate result of the acts of defendants, their respective employee(s), agent(s) and/or servant(s), and of its negligence, the plaintiff sustained personal and psychological injuries to her mind and body, many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering,

14

personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature.   Plaintiff has suffered compensatory damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST CELEBRITY, ZSC, M/V ZENITH, APOLLO AND AYDIN (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

57.   Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 56 above as if fully set forth herein.

58.   On or about July 20, 1999, defendant, Aydin, sexually assaulted, raped and/or battered the plaintiff.

59.   In doing so, Aydin engaged in conduct which he knew, should have known, or which a reasonable person should have known, would result in physical and/or psychological injury to the plaintiff.

60.   Aydin knew that there was a non-fraternization policy in effect for the crewmembers of the M/V ZENITH. Aydin also knew that plaintiff had relied on the fact that, he was a crewmember, when she requested his assistance to help her get back to the vessel on July 20, 1999.

61.  As a crewmember of the M/V ZENITH, Aydin owed a duty to protect and care for the plaintiff.  He, instead, deliberately, knowingly and intentionally breached this duty by sexually assaulting, raping and/or battering the plaintiff.

62.  Defendants, Celebrity, ZSC, M/V ZENITH and/or Apollo are responsible for and/or are strictly or vicariously liable for the acts of its employees, servants and/or agents, including defendant, Aydin.

63.  As a direct and proximate result of the acts of defendants, their respective employee(s), agent(s) and/or servant(s), and of its negligence, the plaintiff sustained personal and psychological injuries to her body, many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature.  Plaintiff has suffered compensatory damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST CELEBRITY,**

### ZSC AND THE M/V ZENITH
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

64.  Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

65.  On or about July 20, 1999, defendant, Aydin, sexually assaulted, raped and/or battered the plaintiff.

66.  After being sexually assaulted, raped and/or battered, the plaintiff went to the M/V ZENITH's physician for treatment of her injuries and trauma sustained during the attack by crewmember, Aydin.

67.  The physician owed the plaintiff a duty of care to properly and competently treat the plaintiff for her injuries, both physical and psychological.

68.  In addition, after being advised by the plaintiff of the sexual assault, rape and/or battery committed by crewmember, Aydin, the physician was required under standard protocols to use a rape kit in treating the plaintiff and to gather the necessary evidence of the sexual assault and rape for use by the local law enforcement authorities in investigating the crime.

69.  However, the physician failed to properly use the rape kit, nor did he or anyone else from the vessel take any steps or measures to thoroughly and properly investigate the

17

sexual assault, rape and/or battery of the plaintiff by
crewmember, Aydin.

70.   Moreover, the physician and/or other crewmembers,
employees, servants and/or agents employed by one or more of
the defendants placed the interests of Celebrity, ZSC, Aydin
and the vessel ahead of the patient, i.e. the plaintiff.
Rather than provide the plaintiff with the proper care and
treatment, they instead questioned the plaintiff in an effort
to intimidate her and to discredit her statements that she
had been sexually assaulted by crewmember, Aydin.

71.   The physician and/or other crewmembers, employees,
servants and/or agents of one or more of the defendants
engaged in conduct which he or she knew, should have known,
or which a reasonable person should have known, would result
in physical and/or psychological injury to the plaintiff.

72.   Defendants, Celebrity, ZSC and M/V ZENITH are
responsible for and/or are strictly or vicariously liable for
the acts of its employees, servants and/or agents, including
defendant, Aydin and the physician and/or other crewmembers
discussed above.

73.   As a direct and proximate result of the acts of
defendants, their respective employee(s), agent(s) and/or
servant(s), and of their negligence, the plaintiff sustained
personal and psychological injuries to her mind and body,

many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature.  Plaintiff has suffered compensatory damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST CELEBRITY, ZSC AND THE M/V ZENITH (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

74.  Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 73 above as if fully set forth herein.

75.  On or about July 20, 1999, defendant, Aydin, sexually assaulted, raped and/or battered the plaintiff.

76.  After being sexually assaulted, raped and/or battered, the plaintiff went to the M/V ZENITH's physician for treatment of her injuries and trauma sustained during the attack by crewmember, Aydin.

77.  The physician owed the plaintiff a duty of care to properly and competently treat the plaintiff for her injuries, both physical and psychological.

78.   In addition, after being advised by the plaintiff of the sexual assault, rape and/or battery committed by crewmember, Aydin, the physician was required under standard protocols to use a rape kit in treating the plaintiff and to gather evidence of the sexual assault for use by the local law enforcement authorities in investigating the crime.

79.   However, the physician failed to properly use the rape kit, nor did he or anyone else from the vessel take any steps or measures to thoroughly and properly investigate the sexual assault, rape and battery of the plaintiff by crewmember, Aydin.

80.   Moreover, the physician and/or other crewmembers, employees, servants and/or agents employed by one or more of the defendants placed the interests of Celebrity, ZSC, Aydin and the vessel ahead of the patient, i.e. the plaintiff. Rather than provide the plaintiff with the proper care and treatment, they instead questioned the plaintiff in an effort to intimidate her and to discredit her statements that she had been sexually assaulted by crewmember, Aydin.

81.   This aforementioned conduct of the physician and/or other crewmembers, employees, servants and/or agents of one or more of the defendants was intentional and sought to emotionally or psychologically injure the plaintiff.

82.    In doing so, the physician and/or other crewmembers, employees, servants and/or agents of one or more of the defendants engaged in intentional or reckless behavior which was extreme, shocking and outrageous.

83.    Defendants, Celebrity, ZSC and M/V ZENITH are responsible for and/or are strictly or vicariously liable for the acts of their employees, servants and/or agents, including defendant, Aydin and the physician and/or other crewmembers, employees, servants and/or agents discussed above.

84.    As a direct and proximate result of the acts of defendants, their respective employee(s), agent(s) and/or servant(s), and of their intentional conduct, the plaintiff sustained personal and psychological injuries to her mind and body, many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature.  Plaintiff has suffered compensatory damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR AN NINTH CAUSE OF ACTION AGAINST CELEBRITY, ZSC AND THE M/V ZENITH (BREACH OF CONTRACT)

85.   Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

86.   The contract of common carriage entered into between plaintiff and defendants, Celebrity, ZSC and M/V ZENITH (hereinafter referred to as "the passenger contract") is a valid and binding contract.

87.   The passenger contract has certain implied duties of care owed by the carrier to the passenger including but not limited to the obligation of the carrier to transport the passenger to and from the cruise destination with the highest degree of care and vigilance for the passenger's safety.

88.   Defendant Aydin committed wrongful acts of sexual assault, battery, negligent infliction of emotional distress and/or intentional infliction of emotional distress against plaintiff.

89.   In addition, the vessel's officers and/or crewmember, and, in particular, the vessel's physician and/or other medical staff failed to treat and/or properly treat the plaintiff's physical and psychological injuries in the aftermath of Aydin's sexual assault, rape and/or battery of

the plaintiff, and they failed to preserve any evidence of the sexual assault, rape and/or battery of plaintiff.

90.   The passenger contract also contains an implied duty of care that the carrier and its employees, servants and/or agents will exercise the highest degree of care and/or reasonable care in treating its passengers and caring for their physical and psychological health during the voyage.

91.   As a result of these aforementioned actions and/or omissions, Celebrity, ZSC and the M.V ZENITH breached their contractual obligations under the passenger agreement and are, therefore, liable to the plaintiff for the wrongful acts of their respective servants, employees and/or agents occurring throughout the entire contractual period, i.e. the seven-day cruise from New York to Bermuda and back to New York.

92.   As a direct result of this breach of contract by defendants, Celebrity, ZSC and M/V ZENITH, plaintiff has suffered compensatory damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

WHEREFORE, the plaintiff, Jane Doe, prays:

That process in due form of law according to the practices of this Court in causes of Admiralty and Maritime

Jurisdiction may issue against defendants, citing them to appear and answer in all and singular the matters aforesaid; and further

That process in due form of law according to the practices of this Court in causes of admiralty and maritime jurisdiction may issue against the M/V "ZENITH" her engines, etc., and that all persons having or claiming any interest therein be cited to appear and answer under oath all singular the matters aforesaid, and that this Court will be pleased to announce a judgment in favor of the plaintiff for her damages with interest, and costs and that this vessel may be condemned and sold to pay therefore; and further

Plaintiff respectfully requests this Court for the following relief:

      a.    That judgment be entered against all defendants in the amount of $2,500,000.00 plus interest;

      b.    That the Court award reasonable costs and attorney's fees incurred by plaintiff in instituting and prosecuting this action;

      c.    That punitive damages be awarded against each defendant; and

      d.    That the Court award any such other and further relief which it may deem just and proper.

Plaintiff demands trial by jury for any and all aforementioned claims so triable by jury.

Dated:    Miami, Florida
          July 14, 2000


By:   _Ba Dehs, lis  FBN 174655_
      Mary Lou Rodon-Alvarez, Esq.
      SCHREIBER RODON-ALVAREZ, P.A.
      2222 Ponce de Leon Boulevard
      Coral Gables, Florida 33134
      Tel: (305) 445-8881
      Fax: (305) 445-6761

           -and-

      Stephan Skoufalos, Esq.
      Richard M. Ziccardi, Esq.
      George J. Tsimis, Esq.
      SKOUFALOS, LLORCA & ZICCARDI, LLP
      Clearwater House
      2187 Atlantic Street, 9th Floor
      Stamford, Connecticut 06902
      Tel: (203) 325-9010
      Fax: (203) 325-9011

# AFFIDAVIT

**STATE OF FLORIDA**                )
                                     ) SS
**COUNTY OF MIAMI-DADE**             )

**BEFORE ME** the undersigned authority personally appeared Gerhardt A. Schreiber who after being duly sworn deposes and says:

I am the attorney for the plaintiff herein.  I have read the foregoing complaint and know the contents thereof and the same is true to the best of my knowledge, except as to the matters therein stated to be on information and belief, and as to those matter I believe it to be true.

The sources of my information and the grounds of my belief are statements and records furnished me by plaintiff and co-counsel.

The reason this verification is not made by the plaintiff is that the plaintiff is not within this district.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Gerhardt A. Schreiber

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _14th_ DAY OF
JULY, 2000

_____
Notary Public
State of Florida

My commission expires:
Commission No.:

Illeana M. Custoya
MY COMMISSION # CC810039 EXPIRES
February 17, 2003
BONDED THRU TROY FAIN INSURANCE, INC.

## Celebrity Cruises®

Exceeding expectations™

2

ZENITH
JUL 17

Ticket Booklet

The BOARDING FORMS must be completed prior to your arrival at the pier

OMEGA WORLD TRAVEL:CATHY
2118 SOUTH QUEEN ST
YORK PA 17403 USA

0200

IMPORTANT: The ten pages of this booklet contain your CRUISE TICKET CONTRACT that limits your rights. It is important that you carefully read all terms of the contract and retain it for future reference.

Celebrity Cruises, Inc. 1050 Caribbean Way, Miami, Florida



OMEGA WORLD TRAVEL:CATHY
2118 SOUTH QUEEN ST
YORK PA 17403 USA

ISSUED 27MAY99  2:21:46

ZENITH
JUL 17

2

IMPORTANT
INFORMATION

ZENITH
JUL 17, 1999

MIA

Passengers are required to provide proof of citizenship and photo
identification in original form(photostatic copies are not accepted)
US CITIZENS:
(1) A valid passport (REQUIRED FOR EUROPEAN SAILINGS)
(2) A birth certificate AND valid photo ID card (driver's license). "
*Voter's registration cards are not accepted as proof of citizenship."
NON-US CITIZENS:
(1) A valid passport with multiple re-entry visas and a valid photo.
(2) A valid alien registration card with photo.
Failure to present the necessary documents and/or visas at the pier,
for the visited port of calls, could result in denied embarkation.

IMPORTANT
INFORMATION

ZENITH
JUL 17, 1999
MIA
CRUISECOMBO PACKAGE.
THIS INFORMATION DOES NOT APPLY IF YOU HAVE PURCHASED A PRE OR POST

1- ** Guests who have purchased transfer vouchers:
Please attach the enclosed ship's bag tags & personal ID to bags
before departing home. You will be on an arrival manifest and a cruis
line agent will meet your flight either at the arrival gate or in the
Baggage Claim Area and will direct you to your transportation.
2- ** Guests who have NOT purchased transfers:
Please do not tag your luggage until after you have claimed your bags
at the airport.

```
                                          CRUISE
                                          ITINERARY


                              Arrive      Depart
                                          04:30 PM


                              08:00 AM

                              09:00 AM    06:00 AM

                                          03:00 PM


                              08:00 AM
```

| Date   | Port                          | Arrive   | Depart   |
|--------|-------------------------------|----------|----------|
| JUL 17 | NEW YORK, NEW YORK            |          | 04:30 PM |
| JUL 18 | AT SEA                        |          |          |
| JUL 19 | HAMILTON, BERMUDA             | 08:00 AM |          |
| JUL 20 | HAMILTON, BERMUDA             |          |          |
| JUL 21 | HAMILTON, BERMUDA             |          |          |
| JUL 22 | ST. GEORGE ISLAND, BERMUDA    | 09:00 AM | 06:00 AM |
| JUL 23 | ST. GEORGE ISLAND, BERMUDA    |          | 03:00 PM |
| JUL 23 | AT SEA                        |          |          |
| JUL 24 | NEW YORK, NEW YORK            | 08:00 AM |          |

BOARDING PASS

```
****************************
*                          *
* For Official Use Only    *
*                          *
*                          *
*                          *
*                          *
*                          *
*                          *
****************************
```

Passenger Name:

Booking Id:

Ship Name:        ZENITH

Sail Date:        JULY 17, 1999

State Room:

State Room Change: _____

Dining Seating: Main

**IMPORTANT – PASSENGER**
**READ ALL CLAUSES (PAGE 1-4)**

## CRUISE TICKET CONTRACT 1

Whether or not signed by Passenger, this ticket shall be deemed to be an undertaking and acknowledgment by Passenger that he accepts on behalf of himself and all other persons traveling under this ticket, all the terms and conditions set out herein.

1. (a) "Passenger" includes all persons traveling under this ticket and their heirs and representatives. "Passenger" shall include the plural and the use of the masculine shall include the feminine

(b) "Carrier" means the cruise line operator named on the outside cover of the ticket package, all Vessels, and their respective employees, agents, affiliates, successors and assigns.

(c) "Vessel" means the ship chartered by Carrier on which Passenger may be traveling or against which Passenger may assert a claim.

2. (a) Each adult Passenger is permitted to carry up to two hundred pounds (200 lbs.) of luggage aboard the Vessel. In no event shall any Passenger bring on board the Vessel any controlled substances, live animals, weapons, firearms, explosives or other similar property without written permission from Carrier. Carrier reserves the right to refuse to permit any Passenger to take on board any item Carrier deems inappropriate.

(b) Unless negligent, Carrier is not responsible nor liable for any loss of or damage to Passenger's property. Liability for loss of or damage to Passenger's property in connection with any air or ground transportation shall be the sole responsibility of the provider of the service and in accordance with applicable limitations.

(c) Carrier's liability for loss or damage to property is limited to $300.00 per Passenger unless Passenger declares the true value in writing and pays Carrier before embarkation a fee of five percent (5%) of the amount that such value exceeds $300.00. In such event, Carrier's liability shall be limited to its true declared value, but not exceeding $5,000

(d) If no event shall Carrier be liable for loss or for damage to jewelry, cash, negotiable paper, photographic/electronic equipment or other valuables unless they are deposited with Carrier for safekeeping against receipt. Carrier's liability for loss of or damage to valuables so deposited shall not exceed the amounts indicated in Clause 2(c).

3. No undertaking or warranty shall be given or shall be implied as to the seaworthiness, fitness or condition of the Vessel or any food or drink supplied on board.

4. Any medical personnel, masseuse, masseur, hair stylist, manicurist or other service providers on board the Vessel are provided solely for the convenience of Passenger. Such persons are independent contractors and not acting as agents or representatives of Carrier. Carrier assumes no liability whatsoever for any treatment, diagnosis,

## CRUISE TICKET CONTRACT 1

### IMPORTANT – PASSENGER
### READ ALL CLAUSES (PAGE 1-4)

Whether or not signed by Passenger, this ticket shall be deemed to be an undertaking and acknowledgement by Passenger that he accepts on behalf of himself and all other persons traveling under this ticket, all the terms and conditions set out herein.

1. (a) "Passenger" includes all persons traveling under this ticket and their heirs and representatives.  "Passenger" shall include the plural and the use of the masculine shall include the feminine.

(b) "Carrier" means the cruise line operator named on the inside cover of the ticket package, all Vessels, and their respective employees, agents, affiliates, successors and assigns.

(c) "Vessel" means the ship chartered by Carrier on which Passenger may be traveling or against which Passenger may assert a claim.

2. (a) Each adult Passenger is permitted to carry up to two hundred pounds (200 lbs.) of luggage aboard the Vessel. In no event shall any Passenger bring on board the Vessel any controlled substances, live animals, weapons, firearms, explosives or other similar property without written permission from Carrier. Carrier reserves the right to refuse to permit any Passenger to take on board any item Carrier deems inappropriate.

(b) Unless negligent, Carrier is not responsible nor liable for any loss of or damage to Passenger's property. Liability for loss of or damage to Passenger's property in connection with any air or ground transportation shall be the sole responsibility of the provider of the service and in accordance with applicable limitations.

(c) Carrier's liability for loss or damage to property is limited to $300.00 per Passenger unless Passenger declares the true value in writing and pays Carrier an embarkation fee of five percent (5%) of the amount that such value exceeds $300.00. In such event, Carrier's liability shall be limited to its true declared value, but not exceeding $5,000.

(d) In no event shall Carrier be liable for loss of or damage to jewelry, cash, negotiable paper, photographic/electronic equipment or other valuables unless they are deposited with Carrier for safekeeping against receipt. Carrier's liability for loss of or damage to valuables so deposited shall not exceed the amounts indicated in Clause 2(c).

3. No undertaking or warranty shall be given or shall be implied as to the seaworthiness, fitness or condition of the Vessel or any food or drink supplied on board.

4. Any medical personnel, masseuse, hair stylist, manicurist or other service providers on board the Vessel are provided solely for the convenience of Passenger. Such persons are independent contractors and not acting as agents or representatives of Carrier. Carrier assumes no liability whatsoever for any treatment, diagnosis,

Page 2

advice, examination or other services provided by such persons. Passenger shall pay for all medical care requested or required, whether aboard or ashore, including the cost of any emergency medical care or transportation incurred by Carrier.

5. All arrangements made for or by Passenger for air transportation, shore excursions, ground tours, ground transportation, hotels, restaurants and other similar activities or services are made solely for Passenger's convenience and are at Passenger's risk. The providers of such services are independent contractors and are not acting as agents or representatives of Carrier. In no event shall Carrier be liable for any accident or harm to Passenger which occurs off the Vessel or as a result of any acts, omissions or negligence of any independent contractors.

6. Carrier may for any reason, at any time and without prior notice, cancel, advance, postpone or deviate from any scheduled sailing or port of call, or substitute another vessel or port of call, and shall not be liable for any loss whatsoever to Passenger by reason of such cancellation, advancement, postponement, substitution or deviation. By way of example, and not limitation, Carrier may deviate from any scheduled sailing and may otherwise land Passenger and his property at any port if Carrier believes that the voyage or any Passenger or property may be adversely affected as a result of hostilities, blockages, prevailing weather conditions, labor conflicts, strikes onboard or ashore, breakdown of Vessel, congestion, docking difficulties or any other cause whatsoever.

7. Carrier shall have the right to comply with any orders, recommendations, or directions whatsoever given by any governmental entity or by persons purporting to act with such authority and such compliance shall not be deemed a breach of this Contract.

8. Refunds for Passenger cancellations prior to sailing are limited by the terms of Carrier's refund policy. Passengers are advised to consult the Carrier's cruise brochure for the terms of Carrier's refund policy.

9. All Passports, visas and other travel documents required for embarkation and disembarkation and at all ports of call are the responsibility of Passenger.

10. Passenger, or if a minor, his parent or guardian, shall be liable to, and shall reimburse Carrier for any damage to the Vessel or any property of Carrier caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of the Passenger, and Passenger, or if a minor, his parent or guardian, shall further indemnify Carrier and the Vessel and each and all of their agents and servants against all liability which Carrier or the Vessel or such agents or servants may incur towards any person or company or government for any personal injury, death or damage to property caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of Passenger.

Page 3

11. IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS CONTRACT SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE A COURT LOCATED IN MIAMI, FLORIDA, U.S.A. TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. PASSENGER HEREBY WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN ANY COURT LOCATED IN MIAMI, FLORIDA.

12. (A) NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER ON THE VESSEL UPON ANY CLAIM RELATING TO LOSS OF OR DAMAGE TO PROPERTY UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, SHALL BE DELIVERED TO CARRIER AT ITS PRINCIPAL OFFICE WITHIN TEN (10) DAYS AFTER TERMINATION OF THE VOYAGE TO WHICH THIS CONTRACT RELATES; AND IN NO EVENT SHALL ANY SUCH SUIT FOR ANY CAUSE AGAINST CARRIER ON THE VESSEL RELATIVE TO LOSS OR DAMAGE TO PROPERTY BE MAINTAINABLE UNLESS SUCH SUIT SHALL BE COMMENCED (FILED) WITHIN SIX (6) MONTHS AFTER THE TERMINATION OF THE VOYAGE AND PROCESS SERVED WITHIN THIRTY (30) DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE CONTRARY.

(B) NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER OR THE VESSEL FOR ANY CLAIM, INCLUDING BUT NOT LIMITED TO, DELAY, DETENTION, PERSONAL INJURY, ILLNESS OR DEATH OF PASSENGER UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, SHALL BE DELIVERED TO CARRIER AT ITS PRINCIPAL OFFICE WITHIN SIX (6) MONTHS FROM THE DAY CAUSE OF ACTION OCCURRED; AND IN NO EVENT SHALL ANY SUCH SUIT FOR ANY CAUSE AGAINST CARRIER ON THE VESSEL BE MAINTAINABLE UNLESS SUCH SUIT SHALL BE COMMENCED (FILED) WITHIN ONE (1) YEAR FROM THE DAY WHEN THE CAUSE OF ACTION OCCURRED AND PROCESS SERVED WITHIN THIRTY (30) DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE CONTRARY.

(C) THE CARRIER HEREBY DISCLAIMS ALL LIABILITY TO THE PASSENGER FOR DAMAGES FOR EMOTIONAL DISTRESS, MENTAL SUFFERING OR PSYCHOLOGICAL INJURY OF ANY KIND UNDER ANY CIRCUMSTANCES, EXCEPT TO THE EXTENT SUCH DISCLAIMER IS PROHIBITED BY 46 U.S.C. §183C (B).

(D) THE EXCLUSIONS OR LIMITATIONS OF LIABILITY OF CARRIER SET FORTH IN THE PROVISIONS OF THIS CONTRACT SHALL ALSO APPLY TO AND BE FOR THE BENEFIT OF AGENTS, INDEPENDENT CONTRACTORS, CONCESSIONAIRES AND SUPPLIERS OF CARRIER, AS WELL AS OWNERS AND OPERATORS OF ALL SHORESIDE PROPERTIES AT WHICH THE VESSEL MAY CALL, AS WELL AS OWNERS, DESIGNERS, INSTALLERS, SUPPLIERS AND MANUFACTURERS OF THE VESSEL OR ANY COMPONENT PARTS THEREOF, TOGETHER WITH THE EMPLOYEES AND SERVANTS OF EACH OF THE FOREGOING.

Page 4

13. Passenger, or if a minor, this parent or guardian, shall be liable to Carrier and to the Vessel for any fines or penalties imposed on the Vessel or Carrier by any authorities for his failure to observe or comply with local governmental laws or regulations, including requirements relating to immigration, customs or excise.

14. Passenger warrants that he and those traveling with him are fit for travel and that such travel will not endanger themselves or others. Carrier reserves the right to terminate a Passenger's cruise at any time, at the risk and expense of the Passenger disembarked, when in the opinion of Carrier, Passenger is believed to be a danger to himself or a disturbance or danger to others.

15. Carrier shall not be required to refund any portion of the fare paid by any Passenger who fails for any reason to be onboard the Vessel at the time of the Vessel's departure from the port of embarkation or any port of call and shall not be responsible for lodging, meals, transportation or other expenses incurred by Passenger as a result thereof. Carrier shall have no obligation to any Passenger to deviate from any scheduled sailing or port of call.

16. Carrier has the exclusive right to include photographic, video and other visual portrayals of Passenger in any pictorial medium of any nature whatsoever for the purpose of trade, advertising, sales, publicity or otherwise, without compensation to Passenger; and all rights, title and interest therein (including all worldwide copyrights thereon) shall be Carrier's sole property, free from any claims by Passenger or any person deriving any rights or interest from Passenger.

17. Passenger acknowledges and confirms that any travel agent utilized by Passenger in connection with the issuance of this ticket is, for all purposes, Passenger's agent and Carrier shall not be liable for any representation made by said travel agent. Passenger shall at all times remain liable to Carrier for the price of passage.

18. In addition to the restrictions and exemptions from liability provided in this Contract, Carrier shall have the full benefit of any applicable laws providing for limitation and exoneration from liability, and nothing in this Contract is intended to operate to limit or deprive Carrier of any such statutory limitation of or exoneration from liability. Without limiting the foregoing, Carrier claims benefit of all restrictions, exemptions and limitations of the "Convention Relating to the Carriage of Passengers and Their Luggage by Sea" of 1974 as well as the Protocol to the "Convention Relating to the Carriage of Passengers and Their Luggage by Sea" of 1976 ("Athens Convention"), which limits the liability of the Carrier for the death of personal injury to a passenger to no more than the applicable amount of Special Drawing Rights as defined therein, and all other limits on damages or loss to personal property.

19. This Contract contains the entire agreement between Carrier and Passenger and supersedes any other agreements, written or oral, relating to the subject matter. Any waiver of any provision of this Contract must be made in writing and signed by Carrier. If any portion of this Contract shall be determined to be invalid, then said portion shall be deemed severed from the Contract in such jurisdiction only and all remaining portions shall remain in full force and effect.

Boarding Forms

IMPORTANT: The enclosed forms must be completed prior to boarding

☐ Complete the *Passenger Clearance Information* form (for all guests)

☐ Complete the *Bermuda Immigration* form (out of Bermuda)

☐ Complete the *US Immigration Information* form (for non-US citizens only)

calling from

Direct Service

## US Immigration Information

### Informacion Para Immigracion En Los E.E.U.U.

THIS FORM IS FOR NON-US CITIZENS ONLY! Please complete this form prior to examination. You will also need to present proof of citizenship documents.

PARA TODO PASAJERO QUE NO SEA CIUDADANO AMERICANO: Antes de embarcar, es necesario que complete toda la informacion requerida en esta tarjeta, ademas necesita presentar documentacion requerida para poder viajar.

PASSENGER'S NAME

AIRLINE NO. OF CANAROTE          SAILING DATE FROM DE SALIDA

FAMILY NAME APELLIDO

FIRST NAME NOMBRE PROPIO

COUNTRY OF CITIZENSHIP CIUDADANO DE          COUNTRY OF BIRTH PAIS DE NACIMIENTO

ADDRESS IN THE US DIRECCION EN LOS E.E.U.U.          ADDRESS WHILE IN TRANSIT/DOMICILIO EN LOS E.E.U.U. A SU LLEGADA/DURANTE EL TRANSITO

HOME ADDRESS DOMICILIO PERMANENTE          PHONE TELEFONO

PASSPORT NO. NO. DE PASAPORTE          SIGNATURE FIRMA

ALIEN REGISTRATION CARD NO. (ALIEN RESIDENTS OF THE USA AND) NUMBER DESIGNADO EN TARJETA DE RESIDENCIA ASIGNADO EL CUALES SE ESPECIFICA SI USTED...

## Important!

Don't forget to bring the correct Travel Documentation and your Luggage Tags.

**TRAVEL DOCUMENTATION: US citizens** will need proof of citizenship, such as a certified birth certificate with a driver's license or a passport. A valid passport is required for travel to Europe. (Voter's Registration is no longer accepted as proof of citizenship.)

**Non-US citizens** will need a valid passport. **Non-resident aliens** of the US will need a passport and alien resident card.

**LUGGAGE TAGS: Air and Cruise Guests.** Fill out and attach one bag tag to each piece of luggage prior to airline check-in. Your bag tag is found toward the end of your *Ticket Booklet*. **Cruise Only Guests.** Fill out and attach one bag tag to each piece of luggage after arriving at the pier. Your bag tag is found toward the end of your *Ticket Booklet*.







# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

00-02523

CIV - GOLD

## I (a) PLAINTIFFS

Jane Doe

## DEFENDANTS

CELEBRITY CRUISES, ZENITH SHIPPING CORPORATION, APOLLO SHIP CHANDLERS, and BARIS AYDIN, in personam, and M/V ZENITH, her engines, boilers, tackle, etc., in rem,

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE. IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

A-Dade 00-25230 Gdd

MAGISTRATE JUDGE
SIMONTON

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Schreiber Rodon-Alvarez, P.A.
2222 Ponce de Leon Blvd. PH
Coral Gables, Florida 33134 (305-445-8881)

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
Dade, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLAND

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Maritime Tort and Jones General Maritime Law 28 USC 1332, 28 USC 1333

IVa. _4_ days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| A CONTRACT | A TORTS | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☒ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | A PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☒ 340 Marine | | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | A SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | A LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | A FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl Ret Inc Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☒ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Refiled
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint.
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions)

JUDGE _____   DOCKET NUMBER _____

DATE
7/14/00

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F I-2

FOR OFFICE USE ONLY: Receipt No. 8-2340   Amount: 150

Date Paid: 7/14/00   MIfp: