UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NUMBER 00-02523 CIV GOLD
Magistrate Judge Simonton

**NIGHT BOX
FILED**

AUG - 2 2001

CLARENCE  MADDOX
CLERK, USDC / SDFL / MIA

JANE DOE,

     Plaintiff,

     -against-

CELEBRITY CRUISES, ZENITH SHIPPING
CORPORATION, APOLLO SHIP
CHANDLERS, INC., CELEBRITY CATERING
SERVICES PARTNERSHIP and BARIS AYDIN,
in personam, and M/V ZENITH, her engines,
boilers, tackle, etc., in rem,

     Defendants.

---------------------------------------------------------------x

### THIRD AMENDED COMPLAINT

COMES NOW, plaintiff, JANE DOE, by and through her counsel, Skoufalos,

Llorca & Ziccardi, LLP and Schreiber Rodon-Alvarez, P.A., as and for her Complaint

against defendants, CELEBRITY CRUISES, ZENITH SHIPPING CORPORATION,

APOLLO SHIP CHANDLERS, CELEBRITY CATERING SERVICES PARTNERSHIP

and BARIS AYDIN, in personam, and the M/V ZENITH, her engines, boilers, tackle, etc.,

in rem, and alleges upon information and belief as follows:

     1.     This is an action for negligence and torts under both Florida law and general

maritime law.

     2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332

insofar as there is diversity of citizenship between the plaintiff and defendants and the



amount in controversy exceeds $75,000.00 excluding interest. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1333 insofar as this matter involves one or more claims which are maritime in nature and come under this Court's admiralty jurisdiction.

3.     Venue is proper under 28 U.S.C. §1391 insofar as two of the defendants reside or may be found within this District, and insofar as certain parties to this action have agreed to the venue of this action.

4.     At all relevant times, plaintiff, Jane Doe, is and was a resident of the State of Connecticut. Plaintiff has recently enlisted in the United States Army and is presently undertaking basic training in the State of Missouri.

5.     At all relevant times, defendant, Celebrity Cruises ("Celebrity"), was and is, a foreign corporation which maintains its headquarters or place of business at 1050 Caribbean Way, Miami, Florida 33132, and which engages in the business of managing, operating, owning and/or chartering passenger vessels including, but not limited to the M/V ZENITH, and which arranges for the hiring, employment, training and/or manning of crew members for vessels owned managed, operated and/or chartered by Celebrity, including the crew of the M/V ZENITH.

6.     At all relevant times, defendant, Zenith Shipping Corporation ("ZSC"), is a foreign corporation organized and existing under the laws of Liberia, and was and is the owner, manager, operator and/or charterer of the passenger vessel, M/V ZENITH.

7.     At all relevant times, defendant, Apollo Ship Chandlers ("Apollo"), was and is a domestic corporation with its primary place of business at 1775 N.W. 70th Avenue, Miami, Florida 33126. Upon information and belief, Apollo engages in the business of providing crewing, manning, and/or other services, including but not limited to the hiring,

retention or employment of certain crew members for vessels owned, managed, operated and/or chartered by Celebrity, including particularly the ZENITH.

8.      At all relevant times, defendant, Celebrity Catering Services Partnership ("Celebrity Catering"), was and is a foreign corporation organized and existing under the laws of Liberia, maintains an office in Monrovia, Liberia, and/or has one or more agents, representatives, subsidiary companies or related companies within this District.  Upon information and belief, Celebrity Catering engages in the business of providing crewing, manning, and/or other services, including but not limited to the hiring, retention or employment of certain crew members for vessels owned, managed, operated and/or chartered by Celebrity, including particularly the ZENITH.

9.      At all relevant times, defendant, Baris Aydin ("Aydin"), was and is a resident and national of the Republic of Turkey with a residential address at Istasyon Caddesi S. Yocel Ap. Kat: 6, No: 17A blok, Denizli, Turkey and, in July of 1999, was a crewmember of the M/V ZENITH, and as such, Aydin was an employee, servant and/or agent of ZSC, Celebrity, Apollo and/or Celebrity Catering.

10.      Celebrity and/or ZSC, either independently or through Apollo Ship Chandlers and/or Celebrity Catering, hired, retained and/or employed Aydin as a member of the crew of the M/V ZENITH.

11.      At all relevant times, the M/V ZENITH was and is a passenger vessel which is owned, managed and/or operated by Celebrity and/or ZSC, and is presently within this District or is expected to be within this District in the near future.

12.      In 1999, plaintiff purchased a passenger ticket for passage on the M/V ZENITH for a seven-day cruise from New York, New York to Bermuda and back to New York, New York.  The cruise or contractual period of the cruise was to commence on July

3

17, 1999 when the vessel departed New York, and was to conclude on July 24, 1999 when the vessel returned to New York. A copy of the terms and conditions of the subject passenger ticket are attached hereto as Exhibit A.

13. Plaintiff paid $1,200.00 for this cruise package. On July 17, 1999, plaintiff boarded the M/V ZENITH in New York City and the vessel departed for Bermuda.

14. On July 19, 1999, the ZENITH arrived at Bermuda and dropped anchor in the port of Hamilton, Bermuda.

15. Soon thereafter, plaintiff with friends went ashore to Hamilton, Bermuda. Hamilton was one of the scheduled ports of call for the M/V ZENITH for this seven-day cruise.

16. In the early morning hours of July 20, 1999, while in Hamilton with friends, plaintiff was feeling ill and accepted the assistance of crewmember Aydin. Plaintiff and/or her friends had recognized defendant Aydin as a crewmember of the ZENITH.

17. At all relevant times, defendant Aydin was acting within the scope of his employment and/or exercising his duties as a member of the ZENITH's crew.

18. Instead of assisting plaintiff to the vessel -- which was docked in the local harbor located across the street -- Aydin led plaintiff away from her friends, away from the local harbor and the vessel, and to a nearby park in Hamilton.

19. Thereafter, Aydin began to make sexual advances towards plaintiff and plaintiff rejected all such advances. Plaintiff requested to be taken immediately back to the vessel.

20. Then, Aydin forcibly grabbed plaintiff and pinned her to the ground. Plaintiff resisted but was unable to escape from Aydin.

21.     Plaintiff repeatedly pleaded with Aydin to stop his attack, but Aydin refused. Aydin then sexually assaulted, raped and/or battered plaintiff in Hamilton, Bermuda.

22.     Plaintiff, bruised, injured and distraught after the attack by Aydin, returned to the vessel and reported the incident to the vessel's security department, as well as the local law enforcement authorities.

23.     Thereafter, Plaintiff saw the vessel's physician for treatment of her injuries and trauma. The vessel's physician noted during his examination of plaintiff that she had a bite mark on her lower lip and that she had vaginal bleeding. The vessel's physician administered a rape kit to plaintiff and, for no explained reason, also administered a breathalyzer test to plaintiff.

24.     Celebrity, ZSC, the vessel's officers and/or other crewmembers failed to investigate the incident and failed to properly collect or preserve evidence of the sexual assault and/or rape of the plaintiff, and/or otherwise obstructed the investigation of the incident.

25.     Celebrity, ZSC and/or the ZENITH's officers failed to discipline defendant, Aydin. Even after plaintiff reported the incident to the vessel's security department and the local law enforcement authorities, Aydin remained on duty and continued to be employed as a crewmember of the ZENITH until local law enforcement personnel took him into custody and removed him from the vessel.

26.     The sexual assault, rape and/or battery of plaintiff by crewmember Aydin occurred during the contractual period insofar as the incident occurred during the ZENITH's cruise or voyage from New York to Bermuda and back to New York.

27.     Defendants, ZSC, Celebrity, Apollo and/or Celebrity Catering, are responsible for and/or are strictly and vicariously liable for the acts of their respective employees, servants and/or agents, including, but not limited to, defendant Aydin.

28.     As a direct result of defendants' aforementioned conduct, plaintiff has suffered physical pain and suffering, mental anguish, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment.  Plaintiff has also incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent or continuing in nature.

29.     Wherefore plaintiff demands judgment against the defendants for damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, CELEBRITY, ZSC, M/V ZENITH, APOLLO AND CELEBRITY CATERING (NEGLIGENCE)

30.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 29 above as if fully set forth herein.

31.     Defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering owed duties of care to plaintiff as a passenger of the M/V ZENITH.

32.     Defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering breached such duties and were negligent insofar as they respectively failed to exercise reasonable care under the circumstances in the following particulars:

      a.     In failing to properly control, supervise, restrict and/or direct its employees, servants and/or agents, including, but not limited to, defendant, Aydin;

      b.     In failing to provide proper security measures and/or personnel for the protection of its passengers, including the plaintiff;

6

c.      In failing to warn the female passengers of the potential dangers to them in being aboard its ship or on shore with members of the vessel's crew;

d.      In failing to properly screen, train and/or monitor its crew and personnel on a regular basis, including, but not limited to, defendant, Aydin;

e.      In negligently hiring its crew members, including, but not limited to, defendant, Aydin, in the following manner:

(1)      Prior to the subject cruise in July of 1999, defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering were required to make an appropriate investigation of Aydin and failed to do so;

(2)      Such an investigation would have revealed the unsuitability of Aydin as an employee for the particular duty to be performed or for employment in general;

(3)      Aydin had previously sexually assaulted, harassed or battered a passenger or co-worker or engaged in other activities that would have indicated to the defendants that Aydin would harm passengers;

(4)      Defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering had reason to know or should have known that Aydin was predisposed to commit one or more wrongs under circumstances that create opportunity or enticement to commit such wrongs; and

(5)      It was unreasonable for defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering to hire Aydin in light of the information they knew or should have known about him.

f.      In failing to take reasonable precautions and safety measures for the safety of its passengers;

7

g.    In failing to exercise the necessary and reasonable care owed to its passengers for the sexual assaults, rapes and/or batteries, especially considering the fact that previous instances of similar conduct by other employees of Celebrity, ZSC, Apollo, Celebrity Catering and/or M/V ZENITH should have put these defendants on notice of the measures needed to be taken to provide its passengers with a safe voyage and vessel, as well as the care necessary in choosing, training and/or employing crewmembers for their passenger vessels;

h.    In failing to enforce cruise line industry and/or their respective internal policies and/or guidelines regarding the non-fraternization of vessel crewmembers with its passengers;

i.    In failing to discipline defendant, Aydin, after his sexual assault, battery and/or rape of the plaintiff; and/or

j.    By negligently retaining Aydin as an employee when, during the course of his employment with one or more of the defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering became aware or should have become aware of Aydin's misconduct, problems, tendencies or other improper behavior that reflected his unfitness, and yet, defendants failed to take further action such as investigation, discharge, discipline or reassignment.

k.    In failing to warn plaintiff or any other passengers of the threat or danger of sexual assault by one of their respective employees during the cruise, including, but not limited to, the following:

(1)    One or more of the defendants were aware of or should have been aware of the danger or threat of sexual assaults or other misconduct by its employees against passengers or other persons during cruises.

8

(2)    One or more of the defendants failed to warn plaintiff of these real and potential dangers and threats to her safety during the subject cruise.

(3)    One or more of the defendants were obligated to warn plaintiff of such real and potential dangers and threats to her safety during the subject cruise.

(4)    As a result of defendants' respective failure to warn plaintiff of these real and potential dangers and threats to her safety, Aydin sexually assaulted, battered and or otherwise harmed plaintiff during the subject cruise.

33.    As a direct and proximate result of aforementioned negligent acts or conduct of the defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering, plaintiff has suffered physical pain and suffering, mental anguish, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment.  Plaintiff has also incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent or continuing in nature.  Plaintiff has suffered damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST CELEBRITY, ZSC, M/V ZENITH, APOLLO, CELEBRITY CATERING AND AYDIN (SEXUAL ASSAULT)

34.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 33 above as if fully set forth herein.

35.    On or about July 20, 1999, plaintiff was sexually assaulted, raped and/or battered by defendant, Aydin, a crewmember of the M/V ZENITH.

9

36.    The sexual assault, rape and/or battery of plaintiff by crewmember Aydin occurred during the contractual period of plaintiff's passenger ticket, and/or occurred while defendant Aydin was acting within the scope of his employment or performing his duties and responsibilities as a member of the vessel's crew.

37.    Plaintiff never consented to being sexually assaulted, raped, battered and/or otherwise injured by defendant Aydin.

38.    Aydin knew or should have known that there was a non-fraternization policy in effect for the crewmembers of the M/V ZENITH.  Aydin also knew that plaintiff had relied on the fact that he was a crewmember when she accepted his assistance to help her get back to the vessel on July 20, 1999, during the contractual period.

39.    As a crewmember of the M/V ZENITH, Aydin owed a duty to protect and care for the plaintiff's safety.  He, instead, deliberately, knowingly and intentionally breached this duty by sexually assaulting, raping and/or battering the plaintiff.

40.    Defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering are responsible for and/or are strictly or vicariously liable for the acts or conduct of their respective employees, servants and/or agents, including defendant Aydin.

41.    As a direct and proximate result of the acts or conduct of defendants, their respective employee(s), agent(s) and/or servant(s), the plaintiff sustained personal and psychological injuries to her mind and body, many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature.  Plaintiff has

suffered damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST CELEBRITY, ZSC, M/V ZENITH, APOLLO, CELEBRITY CATERING AND AYDIN (BATTERY)

42.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 41 above as if fully set forth herein.

43.    On or about July 20, 1999, plaintiff was sexually assaulted, raped and/or battered by defendant Aydin, a crewmember of the ZENITH.

44.    The sexual assault, rape and/or battery of plaintiff by crewmember Aydin occurred during the contractual period of plaintiff's passenger ticket, and/or occurred while defendant Aydin was acting within the scope of his employment or performing his duties and responsibilities as a member of the vessel's crew.

45.    Plaintiff never consented to being sexually assaulted, raped, battered and/or otherwise injured by defendant Aydin.

46.    Aydin knew or should have known that there was a non-fraternization policy in effect for the crewmembers of the M/V ZENITH. Aydin also knew that plaintiff had relied on the fact that he was a crewmember when she accepted his assistance to help her get back to the vessel on July 20, 1999, during the contractual period.

47.    As a crewmember of the M/V ZENITH, Aydin owed a duty to protect and care for the plaintiff's safety. He, instead, deliberately, knowingly and intentionally breached this duty by sexually assaulting, raping and/or battering the plaintiff.

48.    Defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering are responsible for and/or are strictly or vicariously liable for the acts or conduct of their respective employees, servants and/or agents, including defendant Aydin.

49.     As a direct and proximate result of the acts or conduct of defendants, their respective employee(s), agent(s) and/or servant(s), the plaintiff sustained personal and psychological injuries to her mind and body, many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature.  Plaintiff has suffered damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST CELEBRITY, ZSC, M/V ZENITH, APOLLO, CELEBRITY CATERING AND AYDIN (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

50.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 49 above as if fully set forth herein.

51.     On or about July 20, 1999, plaintiff was sexually assaulted, raped and/or battered by defendant Aydin, a crewmember of the ZENITH.

52.     The sexual assault, rape and/or battery of plaintiff by crewmember Aydin occurred during the contractual period of plaintiff's passenger ticket, and/or occurred while defendant Aydin was acting within the scope of his employment or performing his duties and responsibilities as a member of the vessel's crew.

53.     Plaintiff never consented to being sexually assaulted, raped, battered and/or otherwise injured by defendant Aydin.

54.     In assaulting, raping, battering and/or otherwise injuring plaintiff, Aydin engaged in intentional or reckless behavior that was extreme, shocking and outrageous.

12

55.     Aydin knew or should have known that there was a non-fraternization policy in effect for the crewmembers of the M/V ZENITH. Aydin also knew that plaintiff had relied on the fact that he was a crewmember when she accepted his assistance to help her get back to the vessel on July 20, 1999, during the contractual period.

56.     As a crewmember of the M/V ZENITH, Aydin owed a duty to protect and care for the plaintiff's safety. He, instead, deliberately, knowingly and intentionally breached this duty by sexually assaulting, raping and/or battering the plaintiff.

57.     Defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering are responsible for and/or are strictly or vicariously liable for the acts or conduct of their respective employees, servants and/or agents, including defendant Aydin.

58.     As a direct and proximate result of the acts or conduct of defendants, their respective employee(s), agent(s) and/or servant(s), the plaintiff sustained personal and psychological injuries to her mind and body, many of which are permanent and continuing in nature; she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature. Plaintiff has suffered damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST CELEBRITY, ZSC, M/V ZENITH, APOLLO, CELEBRITY CATERING AND AYDIN (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

59.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 58 above as if fully set forth herein.

13

60.    On or about July 20, 1999, the plaintiff was sexually assaulted, raped and/or battered by defendant Aydin, a member of the ZENITH's crew.

61.    The assault, rape and/or battery of plaintiff by crewmember Aydin occurred during the contractual period of plaintiff's passenger ticket, and/or occurred while defendant Aydin was acting within the scope of his employment or performing his duties and responsibilities as a member of the vessel's crew.

62.    Plaintiff never consented to being sexually assaulted, raped, battered and/or otherwise injured by defendant Aydin.

63.    In doing so, Aydin engaged in conduct that he knew, should have known, or which a reasonable person should have known, would result in physical and/or psychological injury to the plaintiff.

64.    Aydin knew or should have known that there was a non-fraternization policy in effect for the crewmembers of the M/V ZENITH.  Aydin also knew that plaintiff had relied on the fact that he was a crewmember when she accepted his assistance to help her get back to the vessel on July 20, 1999, during the contractual period.

65.    As a crewmember of the M/V ZENITH, Aydin owed a duty to protect and care for the plaintiff's safety.  He, instead, deliberately, knowingly and intentionally breached this duty by sexually assaulting, raping and/or battering the plaintiff.

66.    Defendants, Celebrity, ZSC, M/V ZENITH, Apollo and/or Celebrity Catering are responsible for and/or are strictly or vicariously liable for the acts of its employees, servants and/or agents, including defendant Aydin.

67.    As a direct and proximate result of the acts or conduct of defendants, their respective employee(s), agent(s) and/or servant(s), the plaintiff sustained personal and psychological injuries to her body, many of which are permanent and continuing in nature;

14

she has incurred great mental and physical pain and suffering, personal inconvenience, loss of the capacity for the enjoyment of life, humiliation and embarrassment; and she has incurred medical expenses for the care and treatment of her injuries, many of which injuries are permanent and continuing in nature. Plaintiff has suffered damages in the amount of $2,500,000.00 plus interest, as best as can be determined at this time.

WHEREFORE, plaintiff, JANE DOE, demands a trial by jury for any and all of the aforementioned claims so triable by a jury, and plaintiff respectfully requests this Court for the following relief:

      a.      That judgment be entered against all defendants in the amount of $2,500,000.00 plus interest;

      b.      That the Court award reasonable costs incurred by plaintiff in instituting and prosecuting this action; and

      c.      That the Court award any such other and further relief which it may deem just and proper.

Dated: Stamford, Connecticut
        August 2, 2001

By: _____
    Gerhardt A. Schreiber, Esq.
    Florida Bar No. 194655
    SCHREIBER RODON-ALVAREZ, P.A.
    2222 Ponce de Leon Boulevard
    Coral Gables, Florida 33134
    Tel: (305) 445-8881
    Fax: (305) 445-6761

            -and-

By: _____
    Stephan Skoufalos, Esq.*
    Richard M. Ziccardi, Esq.*
    George J. Tsimis, Esq.*
    SKOUFALOS, LLORCA & ZICCARDI, LLP
    Clearwater House
    2187 Atlantic Street, 9th Floor
    Stamford, Connecticut 06902
    Tel: (203) 325-9010
    Fax: (203) 325-9011

* - Admitted *pro hac vice*

## ╳ Celebrity Cruises®

### Exceeding expectations™

**Ticket Booklet**

The BOARDING FORMS must be completed prior to your arrival at the pier.

OMEGA WORLD TRAVEL:CATHY
21:8 SOUTH QUEEN ST
YORK PA 17403 USA

ZENITH
JUL 17

2

0200

IMPORTANT: The tan pages of this booklet contain your
CRUISE TICKET CONTRACT that limits your rights. It is
important that you carefully read all terms of the contract and
retain it for future reference.

Celebrity Cruises, Inc. 1050 Caribbean Way, Miami, Florida

OMEGA WORLD TRAVEL·CATHY
2118 SOUTH QUEEN ST
YORK PA 17403 USA

ISSUED 27MAY99  2:21:46

ZENITH
JUL 17

2

IMPORTANT
INFORMATION

ZENITH
JUL 17, 1999

MIA

Passengers are required to provide proof of citizenship and photo
identification in original form(photostatic copies are not accepted)
US CITIZENS:
(1) A valid passport (REQUIRED FOR EUROPEAN SAILINGS)
(2) A birth certificate AND valid photo ID card (driver's license).
*Voter's registration cards are not accepted as proof of citizenship.*
NON-US CITIZENS:
(1) A valid passport with multiple re-entry visas and a valid photo.
(2) A valid alien registration card with photo.
Failure to present the necessary documents and/or visas at the pier,
for the visited port of calls, could result in denied embarkation.

IMPORTANT
INFORMATION

ZENITH
JUL 17, 1999
MIA

THIS INFORMATION DOES NOT APPLY IF YOU HAVE PURCHASED A PRE OR POST
CRUISECOMBO PACKAGE.

1- ** Guests who have purchased transfer vouchers:
Please attach the enclosed ship's bag tags & personal ID to bags
before departing home. You will be on an arrival manifest and a cruise
line agent will meet your flight either at the arrival gate or in the
Baggage Claim Area and will direct you to your transportation.
2- ** Guests who have NOT purchased transfers:
Please do not tag your luggage until after you have claimed your bags
at the airport.

```
                                        CRUISE
                                        ITINERARY

Date      Port                          Arrive      Depart
JUL 17    NEW YORK, NEW YORK                        04:30 PM
JUL 18    AT SEA
JUL 19    HAMILTON, BERMUDA             08:00 AM
JUL 20    HAMILTON, BERMUDA
JUL 21    HAMILTON, BERMUDA                         06:00 AM
JUL 22    ST. GEORGE ISLAND, BERMUDA    09:00 AM
JUL 23    ST. GEORGE ISLAND, BERMUDA                03:00 PM
JUL 23    AT SEA
JUL 24    NEW YORK, NEW YORK            08:00 AM
```

BOARDING PASS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
*                                               *
*  For Official Use Only                        *
*                                               *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Passenger Name:

Booking Id:

Ship Name:          ZENITH

Sail Date:          JULY 17, 1999

State Room:

State Room Change:  _____

Dining Seating: Main

**IMPORTANT — PASSENGER**
**READ ALL CLAUSES (PAGE 1-4)**

**CRUISE TICKET CONTRACT 1**

Whether or not signed by Passenger, this ticket shall be deemed to be an undertaking and acknowledgement by Passenger that he accepts on behalf of himself and all other persons traveling under this ticket, all the terms and conditions set out herein.

1. (a) "Passenger" includes all persons traveling under this ticket and their heirs and representatives. "Passenger" shall include the plural and the use of the masculine shall include the feminine.

(b) "Carrier" means the cruise line operator named on the inside cover of the ticket package, all Vessels, and their respective employees, agents, affiliates, successors and assigns.

(c) "Vessel" means the ship chartered by Carrier on which Passenger may be traveling or against which Passenger may assert a claim.

2. (a) Each adult Passenger is permitted to carry up to two hundred pounds (200 lbs.) of luggage aboard the Vessel. In no event shall any Passenger bring on board the Vessel any controlled substances, live animals, weapons, firearms, explosives or other similar property without written permission from Carrier. Carrier reserves the right to refuse to permit any Passenger to take on board any item Carrier deems inappropriate.

(b) Unless negligent, Carrier is not responsible nor liable for any loss of or damage to Passenger's property. Liability for loss of or damage to Passenger's property in connection with any air or ground transportation shall be the sole responsibility of the provider of the service and in accordance with applicable limitations.

(c) Carrier's liability for loss or damage to property is limited to $300.00 per Passenger unless Passenger declares the true value in writing and pays Carrier before embarkation a fee of five percent (5%) of the amount that such value exceeds $300.00. In such event, Carrier's liability shall be limited to its true declared value, but not exceeding $5,000.

(d) In no event shall Carrier be liable for loss of or damage to jewelry, cash, negotiable paper, photographic/electronic equipment or other valuables unless they are deposited with Carrier for safekeeping against receipt. Carrier's liability for loss of or damage to valuables so deposited shall not exceed the amounts indicated in Clause 2(c).

3. No endorsing of warranty shall be given or shall be implied as to the seaworthiness, fitness or condition of the Vessel or any food or drink supplied on board.

4. Any medical personnel, masseuse, hair stylist, manicurist or other service providers on board the Vessel are provided solely for the convenience of Passenger. Such persons are independent contractors and not acting as agents or representatives of Carrier. Carrier assumes no liability whatsoever for any treatment, diagnosis,



FROM : SKODPHLOS.CLURCH.ZICCHRDI.LLP.   FAX NO. : 2033255011   Jul. 13 2000 05:40PM P3

## IMPORTANT – PASSENGER
## READ ALL CLAUSES (PAGE 1-4)

**THE TICKET CONTRACT 1**

Whether or not signed by Passenger, this ticket shall be deemed to be an undertaking and acknowledgement by Passenger that he accepts on behalf himself and all other persons traveling under this ticket, all the terms and conditions set out herein.

1. (a) "Passenger" includes all persons traveling under this ticket and their heirs and representatives.   "Passenger" shall include the plural and the use the masculine shall include the feminine.

(b) "Carrier" means the cruise line operator named on the inside cover of the ticket package, all Vessels, and their respective employees, agents, affiliates, successors and assigns.

(c) "Vessel" means the ship chartered by Carrier on which Passenger may be traveling or against which Passenger may assert a claim.

2. (a) Each adult Passenger is permitted to carry up to two hundred pounds (200 lbs.) of luggage aboard the Vessel. In no event shall any Passenger bring on board the Vessel any controlled substances, live animals, weapons, firearms, explosives or other similar property without written permission from Carrier. Carrier reserves the right to refuse to permit any Passenger to take on board any item Carrier deems inappropriate.

(b) Unless negligent, Carrier is not responsible nor liable for any loss of or damage to Passenger's property. Liability for loss of or damage to Passenger's property in connection with any air or ground transportation shall be the sole responsibility of the provider of the service and in accordance with applicable limitations.

(c) Carrier's liability for loss or damage to property is limited to $300.00 per Passenger unless Passenger declares the true value in writing and pays Carrier where embarkation a fee of five percent (5%) of the amount that such value exceeds $300.00. In such event, Carrier's liability shall be limited to its true declared value, but not exceeding $5,000.

(d) In no event shall Carrier be liable for loss of or damage to jewelry, cash, negotiable paper, photographic/electronic equipment or other valuables unless they are posted with Carrier for safekeeping against receipt. Carrier's liability for loss of or damage to valuables so deposited shall not exceed the amounts indicated in Clause 2(c).

3. No undertaking or warranty shall be given or shall be implied as to the seaworthiness, fitness or condition of the Vessel or any food or drink supplied on board.

4. Any medical personnel, masseuse, hair stylist, manicurist or other service providers on board the Vessel are provided solely for the convenience of Passenger. Such persons are independent contractors and not acting as agents or representatives of Carrier. Carrier assumes no liability whatsoever for any treatment, diagnosis,

Page 2

advice, examination or other services provided by such persons. Passenger shall pay for all medical care requested or required, whether aboard or ashore, including the cost of any emergency medical care or transportation incurred by Carrier.

5. All arrangements made for or by Passenger for air transportation, shore excursions, ground tours, ground transportation, hotels, restaurants and other similar activities or services are made solely for Passenger's convenience and are at Passenger's risk. The providers of such services are independent contractors and are not acting as agents or representatives of Carrier. In no event shall Carrier be liable for any accident or harm to Passenger which occurs off the Vessel or as a result of any acts, omissions or negligence of any independent contractors.

6. Carrier may for any reason, at any time and without prior notice, cancel, advance, postpone or deviate from any scheduled sailing or port of call, or substitute another vessel or port of call, and shall not be liable for any loss whatsoever to Passenger by reason of such cancellation, advancement, postponement, substitution or deviation. By way of example, and not limitation, Carrier may deviate from any scheduled sailing and may otherwise land Passenger and his property at any port if Carrier believes that the voyage or any Passenger or property may be adversely affected as a result of hostilities, blockages, prevailing weather conditions, labor conflicts, strikes on board or ashore, breakdown of Vessel, congestion, docking difficulties or any other cause whatsoever.

7. Carrier shall have the right to comply with any orders, recommendations, or directions whatsoever given by any governmental entity or by persons purporting to act with such authority and such compliance shall not be deemed a breach of this Contract.

8. Refunds for Passenger cancellations prior to sailing are limited by the terms of Carrier's refund policy. Passengers are advised to consult the Carrier's cruise brochure for the terms of Carrier's refund policy.

9. All Passports, visas and other travel documents required for embarkation and disembarkation and at all ports of call are the responsibility of Passenger.

10. Passenger, or if a minor, his parent or guardian, shall be liable to, and shall reimburse Carrier for, any damage to the Vessel or any property of Carrier caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of the Passenger; and Passenger, or if a minor, his parent or guardian, shall further indemnify Carrier and the Vessel and each and all of their agents and servants against all liability which Carrier or the Vessel or such agents or servants may incur towards any person or company or government for any personal injury, death or damage to property caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of Passenger.

FROM : SKUUFHLUS,LLURCH,ZICCHRDT,LLP.    FAX NO. : 2033259011    Jul. 13 2000 05:41PM P12

Page 3

11. IT IS AGREED BY AND BETWEEN PASSENGER AND CARRIER THAT ALL DISPUTES AND MATTERS WHATSOEVER ARISING UNDER, IN CONNECTION WITH OR INCIDENT TO THIS CONTRACT SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE A COURT LOCATED IN MIAMI, FLORIDA, U.S.A., TO THE EXCLUSION OF THE COURTS OF ANY OTHER STATE, TERRITORY OR COUNTRY. PASSENGER HEREBY WAIVES ANY VENUE OR OTHER OBJECTION THAT HE MAY HAVE TO ANY SUCH ACTION OR PROCEEDING BEING BROUGHT IN ANY COURT LOCATED IN MIAMI, FLORIDA.

12. (A) NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER ON THE VESSEL UPON ANY CLAIM RELATING TO LOSS OF OR DAMAGE TO PROPERTY UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, SHALL BE DELIVERED TO CARRIER AT ITS PRINCIPAL OFFICE WITHIN TEN (10) DAYS AFTER TERMINATION OF THE VOYAGE TO WHICH THIS CONTRACT RELATES; AND IN NO EVENT SHALL ANY SUCH SUIT FOR ANY CAUSE AGAINST CARRIER ON THE VESSEL RELATING TO LOSS OF OR DAMAGE TO PROPERTY BE MAINTAINABLE UNLESS SUCH SUIT SHALL BE COMMENCED (FILED) WITHIN SIX (6) MONTHS AFTER THE TERMINATION OF THE VOYAGE AND PROCESS SERVED WITHIN THIRTY (30) DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE CONTRARY.

(B) NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER ON THE VESSEL FOR ANY CLAIM, INCLUDING BUT NOT LIMITED TO, DELAY, DETENTION, PERSONAL INJURY, ILLNESS OR DEATH OF PASSENGER UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, SHALL BE DELIVERED TO CARRIER AT ITS PRINCIPAL OFFICE WITHIN SIX (6) MONTHS FROM THE DAY CAUSE OF ACTION OCCURRED; AND IN NO EVENT SHALL ANY SUCH SUIT FOR ANY CAUSE AGAINST CARRIER ON THE VESSEL BE MAINTAINABLE UNLESS SUCH SUIT SHALL BE COMMENCED (FILED) WITHIN ONE (1) YEAR FROM THE DAY WHEN THE CAUSE OF ACTION OCCURRED AND PROCESS SERVED WITHIN THIRTY (30) DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE CONTRARY.

(C) THE CARRIER HEREBY DISCLAIMS ALL LIABILITY TO THE PASSENGER FOR DAMAGES FOR EMOTIONAL DISTRESS, MENTAL SUFFERING OR PSYCHOLOGICAL INJURY OF ANY KIND UNDER ANY CIRCUMSTANCES, EXCEPT TO THE EXTENT SUCH DISCLAIMER IS PROHIBITED AT 46 U.S.C. §183(c).

(D) THE EXCLUSIONS OR LIMITATIONS OF LIABILITY OF CARRIER SET FORTH IN THE PROVISIONS OF THIS CONTRACT SHALL ALSO APPLY TO AND BE FOR THE BENEFIT OF AGENTS, INDEPENDENT CONTRACTORS, CONCESSIONAIRES AND SUPPLIERS OF CARRIER, AS WELL AS OWNERS AND OPERATORS OF ALL SHORESIDE PROPERTIES AT WHICH THE VESSEL MAY CALL, AS WELL AS OWNERS, DESIGNERS, INSTALLERS, SUPPLIERS AND MANUFACTURERS OF THE VESSEL OR ANY COMPONENT PARTS THEREOF, TOGETHER WITH THE EMPLOYEES AND SERVANTS OF EACH OF THE FOREGOING.

FROM : SKOUFALOS,LLOROH,ZITCHARDI,LLP.   FAX NO. : 2033259011   Jul. 13 2000 05:41PM P13

Page 4

13. Passenger, or if a minor, his parent or guardian, shall be liable to Carrier and to the Vessel for any fines or penalties imposed on the Vessel or Carrier by any authorities for his failure to observe or comply with local governmental laws or regulations, including requirements relating to immigration, customs or excise.

14. Passenger warrants that he and those travelling with him are fit for travel and that such travel will not endanger themselves or others. Carrier reserves the right to terminate a Passenger's cruise at any time, at the risk and expense of the Passenger disembarked, when, in the opinion of Carrier, Passenger is believed to be a danger to himself or a disturbance or danger to others.

15. Carrier shall not be required to refund any portion of the fare paid by any Passenger who fails for any reason to be onboard the Vessel at the time of the vessel's departure from the port of embarkation or any port of call and shall not be responsible for lodging, meals, transportation or other expenses incurred by Passenger as a result thereof. Carrier shall have no obligation to any Passenger to deviate from any scheduled sailing or port of call.

16. Carrier has the exclusive right to include photographic, video and other visual portrayals of Passenger in any pictorial medium of any nature whatsoever for the purposes of trade, advertising, sales, publicity or otherwise, without compensation to Passenger, and all rights, title and interest therein (including all worldwide copyrights therein) shall be Carrier's sole property, free from any claims by Passenger or any person deriving any rights or interest from Passenger.

17. Passenger acknowledges and confirms that any travel agent utilized by Passenger in connection with the issuance of this ticket is, for all purposes, Passenger's agent and Carrier shall not be liable for any representation made by said travel agent. Passenger shall at all times remain liable to Carrier for the price of passage.

18. In addition to the restrictions and exemptions from liability provided in this Contract, Carrier shall have the full benefit of any applicable laws providing for limitation and exoneration from liability, and in/or any in this Contract is intended to operate to limit or deprive the Carrier of any such statutory limitation of or exoneration from liability. Without limiting the foregoing, Carrier claims benefit of all restrictions, exemptions and limitations of the "Convention Relating to the Carriage of Passengers and Their Luggage by Sea" of 1974 as well as the Protocol to the "Convention Relating to the Carriage of Passengers and Their Luggage by Sea" of 1976 ("Athens Convention"), which limits the liability of the Carrier for the death of or personal injury to a passenger to no more than the applicable amount of Special Drawing Rights as defined therein, and all other limits on damage or loss to personal property.

19. This Contract contains the entire agreement between Carrier and Passenger and supersedes any other agreements, written or oral, relating to the subject matter. Any waiver of any provision of this Contract must be made in writing and signed by Carrier. If any portion of this Contract shall be determined to be invalid, then said portion shall be deemed severed from the Contract in such jurisdiction only and all remaining portions shall remain in full force and effect.

FROM : SKADDEN,ARPS,LLORCH,ZICCARDI,LLP.   FAX NO. : 2055255011   JUL. 15 2000 05:42PM P14

FROM : SKOUFALOS,LLORCA,ZICCARDI,LLP.   FAX NO. : 2033259011   Jul. 13 2000 05:42PM P15

# US Immigration Information

*Información Para Inmigración En Los E.E.U.U.*

## Important!

**Don't forget to bring the correct Travel Documentation and your Luggage Tags.**

**TRAVEL DOCUMENTATION:** US citizens will need proof of citizenship, such as a certified birth certificate with a driver's license or a passport. A valid passport is required for travel to Europe. (Voter's Registration is no longer accepted as proof of citizenship.)

**Non-US citizens** will need a valid passport. **Non-resident aliens** of the US will need a passport and alien resident card.

**LUGGAGE TAGS: Air and Cruise Guests.** Fill out and attach one bag tag to each piece of luggage prior to airline check-in. Your bag tag is found toward the end of your *Ticket Booklet*.

**Cruise Only Guests.** Fill out and attach one bag tag to each piece of luggage after arriving at the pier. Your bag tag is found toward the end of your *Ticket Booklet*.

FROM : SKOUFALOS.LLORCA.ZICCARDI.LLP.   FAX NO. : 2033259011   Jul. 13 2000 05:43PM P17



